## WESTERN CASUALTY & SURETY CO. v. NATIONAL MUT. CASUALTY CO.

### No. 9733.

Circuit Court of Appeals, Fifth Circuit.

Feb. 3, 1941.

Rehearing Denied March 8, 1941.

Fred J. Lotterhos, of Jackson, Miss., for appellant.

Jas. A. Alexander, of Jackson, Miss., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On December 16, 1939, The Western Casualty & Surety Company obtained a

judgment in the District Court against P. W. Sadler and others for $3,465.68, plus interest and costs. Sadler was the Mississippi general agent for National Mutual Casualty Company, an Oklahoma corporation.

On January 5, 1940, The Western Casualty & Surety Company caused a writ of garnishment to issue and be served upon National Mutual Casualty Company. The garnishee filed·answer saying that it was not indebted to Sadler and that it did not know of any person who was indebted to him. The Western Company filed a contest of the answer contending: (1) That it believed that P. W. Sadler had deposited money or securities with the National Company to guarantee the payment of premiums collected by him; and (2) That it believed that there were many clients of Sadler in Mississippi who were indebted to him for premiums and that the National Company knew of them.

In connection with its contest the Western Company propounded interrogatories to be answered by the garnishee in accordance with rules of the District Court. The National Company answered all interrogatories except No. 4 which sought the names and addresses of every policy holder "of National Mutual Casualty Company handled by P. W. Sadler and all known clients of P. W. Sadler." The court at first ruled that the garnishee was not bound to answer this sweeping interrogatory, but later it set aside its order and compelled the garnishee to answer. Answer was fully made. On the record made by the pleadings, interrogatories, and affidavits, the Western Company moved for judgment. The motion was overruled and judgment was entered dismissing the garnishment writ. The Western Company appealed.

After the National Company had filed a copy of Sadler's agency contract in court, and after full and complete answer to all interrogatories had been made, the Western Company completely abandoned the original grounds of its contest. That we may ascertain how the Western Company seeks to recover a judgment against the garnishee we follow its contention. The basis of appellant's contention is Section 9 of the agency contract which provides: "9. It is mutually understood and agreed that all premiums paid to the Agent shall be considered the property of the Company, and the commission which the Company agrees to pay the Agent shall be considered a debt due by the Company to the Agent, and shall not be construed, in any way, as giving rise to a lien or claim on the premiums and the agreement on the part of the Company to allow the Agent to deduct commissions from premiums collected shall in no sense be construed as a waiver of the right of the Company to the ownership of said premiums."

█ The record shows that Sadler was indebted to the National Company in the sum of $13,075.14 when the writ of garnishment was served. The answer to Supplemental Interrogatory No. 2 shows that since the service of the writ Sadler paid appellee $4,808.09 on his account. Answer to Supplemental Interrogatory No. 3 shows that at the close of business on March 31, 1940, Sadler was indebted to his company in the sum of $8,171.69; and answer to Supplemental Interrogatory No. 5 shows the types of insurance issued and the amounts due the garnishee by Sadler on each type. These amounts make up the total of Sadler's indebtedness to the company. The Western Company, by applying the commission rates scheduled in Section 15 of the agency contract, calculates that Sadler collected premiums amounting to $6,110.02, that he retained commissions amounting to $1,414.49 and then paid $4,808.09 on his premium account. It contends, therefore, that the sum of $1,414.49 was a debt due by the company to Sadler and that this sum spells out the amount for which it should recover a monetary judgment against the garnishee. If we were permitted to stop here a judgment might be predicated upon this contention. The burden of proof, however, was upon the Western Company to show that the garnishee became indebted to Sadler after the service of the garnishment writ. 28 C.J., Garnishment, §§ 465, 466.

█ It was incumbent upon the appellant to show by a preponderance of the evidence that the amount claimed by it, $1,414.19, was actually retained by Sadler as commissions during the life of the writ of garnishment, and that the commissions constituted debts due Sadler by the garnishee. The fact that Section 9 of the agency contract recites that commissions are to be considered debts "due by the Company to the Agent" is not determinative of the issues. The facts, rather than the contractual relationship of the parties, are controlling in a case of this kind. Cf. Peoples Bank v. Gore, 178 Miss. 216, 172 So. 506.

Nowhere in the record is it shown that any money due Sadler came into the possession or control of the garnishee. With reference to the sum of $4,808.09 paid by Sadler on his premium account National Mutual Casualty Company has this to say in its answers to the supplemental interrogatories:

"What part or portion of this sum, or whether or not any of the same was collected from policy holders during that period, this company is unable to state.

\* \* \* \* \*

"The amount paid to this company by P. W. Sadler on his premium account since the service of the garnishment summons in this case is $4,808.09. What amount may have been collected from policy holders during that period this company is unable to state as such collections are made by P. W. Sadler and remittances made by him from time to time to apply on his account for policies reported and charged to him are not made applicable to any particular policy but apply to his general debt balance."

Sadler was indebted to the garnishee and it had the right to accept payments on his premium account. The acceptance of the payment of $4,808.09 did not establish liability against the National Company for any amount under the writ. The cases relied upon by the appellant are distinguishable from this case. These cases recognize that a garnishee has the right to set off any bona fide debt that may be due him by the judgment debtor, and they correctly state the law that the money due by the garnishee to the judgment debtor "must be actually applied to garnishee's debt; and if not applied, but is paid to the debtor, such payment would be at the peril of garnishee." Brondum v. Rosenblum, 151 Miss. 91, 117 So. 363, 365; Peoples Bank v. Gore, 178 Miss. 216, 172 So. 506; Cf. Montgomery Candy Co. v. Wertheimer-Swarts Shoe Co., 2 Ala.App. 403, 57 So. 54; Jenkins v. Leader, 9 Ala.App. 116, 62 So. 370. In these cases the garnishee continued to pay, or permit the employee to draw, salary or compensation after service of the writ of garnishment. The evidence fails to show that this was done in the case at bar.

Sadler conducted a general insurance business and had authority to issue, countersign, and deliver insurance policies and bonds in the State of Mississippi. We may conclude from the agency contract that he was bonded and that he employed subagents to assist him. He selected his own risks and had wide latitude in the collection of premiums from his clients. From the record we are unable to say that any part of the money paid by Sadler to the appellee insurance company represented premiums belonging to the company and which had been collected during the life of the garnishment writ. The Western Casualty & Surety Company failed to carry its burden of proof and the court properly entered judgment dismissing the writ.

The judgment is affirmed.